IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

YOLANDA PAYNE,

        Plaintiff,                      No. CIV S-10-0475 KJM-EFB

    vs.

HUHTAMAKI COMPANY MANUFACTURING,

        Defendant.                   <u>ORDER</u>

          /

        This matter comes before the court upon the motion for summary judgment filed by defendant Huhtamaki Company Manufacturing ("defendant"). (ECF 11.) The hearing on this motion took place on June 8, 2011; Chris Phillips appeared for plaintiff and Richard Gray appeared for defendant. For the following reasons, defendant's motion is GRANTED.

I.    PROCEDURAL HISTORY

        Plaintiff brought her complaint in Sacramento County Superior Court on December 3, 2009, alleging seven causes of action: 1) gender discrimination in violation of California Government Code § 12940; 2) wrongful termination in violation of public policy; 3) breach of implied covenant of good faith and fair dealing; 4) medical condition discrimination in violation of California Government Code § 12940; 5) failure to provide a reasonable accommodation in violation of California Government Code § 12940(n); 6) failure to engage in

1

an interactive process in determining reasonable accommodations in violation of California Government Code § 12940(n); and 7) intentional infliction of emotional distress. (Compl., Ex. A, Not. of Removal, ECF 1.) Defendant removed this action to this court on February 25, 2010. (ECF 1.)

Defendant filed this motion for summary judgment on April 25, 2011. (ECF 11.) Plaintiff filed her opposition on May 25, 2011, in which she indicates she does not oppose defendant's motion with respect to her third, fifth and sixth causes of action. (Pl.'s Opp'n at 2 n.1, ECF 18.) These claims are deemed dismissed and are not addressed in this order. Defendant filed its reply on June 1, 2011. (ECF 19.)

II.     UNDISPUTED FACTS

Defendant's Sacramento facility where plaintiff is employed manufactures molded fiber packaging products. (Def.'s Statement of Undisputed Facts ¶ 1, ECF 13 (hereinafter, "ECF 13"); Pl.'s Opp'n Statement of Undisputed Facts ¶ 1, ECF 18-3 (hereinafter, "ECF 18-3").) Plaintiff began working for defendant in May 2005 as a machine operator. (ECF 13 ¶ 2; ECF 18-3 ¶ 2.)

Plaintiff was diagnosed with breast cancer in November 2007; as a result, she underwent a lumpectomy and took a leave of absence for several months. (ECF 13 ¶ 46; ECF 18-3 ¶ 46.) She returned to work under restrictions. (ECF 13 ¶ 47; ECF 18-3 ¶ 47.)

In November 2008, plaintiff bid on a stock prep operation position in the beater room. (ECF 13 ¶ 48; ECF 18-3 ¶ 48.) Plaintiff's work restrictions at that time were about to expire and Craig Komulainen, Operations Manager, told her to obtain current information from her doctor. (ECF 13 ¶ 49; ECF 18-3 ¶ 49.) Plaintiff's doctor, Scarlett LaRue, signed a medical evaluation form on November 7, 2008, indicating plaintiff was under no work restrictions. (ECF 13 ¶ 51; ECF 18-3 ¶ 51.) The same day, Dr. LaRue also signed a visit verification form placing work restrictions on plaintiff for three additional months. (ECF 13 ¶ 52; ECF 18-3 ¶ 52.) The visit verification form did not specify a position to which the restrictions would apply. (*See*

Supp. Gray Decl., Payne Dep., Ex. 6, ECF 21.)  Komulainen asked plaintiff to obtain clarification from her doctor due to the two conflicting reports.  (ECF 13 ¶ 53; ECF 18-3 ¶ 53.)  On November 10, 2008, Komulainen called Dr. LaRue directly and expressed his concern that the stock prep operator job was more strenuous than the machine operator job.  (ECF 13 ¶ 54; ECF 18-3 ¶ 54.)  A letter written by Dr. LaRue confirms that Komulainen expressed concerns that the stock prep operator job was more strenuous, regardless of plaintiff's feelings regarding the relative strain of the two jobs.  (Phillips Decl., Payne Dep., Ex. 9, ECF 18-2.)  Komulainen ultimately accepted Dr. LaRue's opinion that plaintiff could perform the stock prep operator job without restrictions.  (ECF 13 ¶ 55; ECF 18-3 ¶ 55.)[1]  Plaintiff was awarded her bid for the stock prep operator position on December 4, 2008.  (ECF 13 ¶ 56; ECF 18-3 ¶ 56.)

On February 3, 2009, plaintiff left work without cleaning her work station.  (ECF 13 ¶ 25; ECF 18-3 ¶ 25.)  The next day, plaintiff was called into a meeting with her supervisor and others, where she was shown pictures of her uncleaned work station; however, plaintiff was never disciplined as a result of this incident.  (ECF 13 ¶¶ 26-27; ECF 18-3 ¶¶ 26-27.)[2]

On February 9, 2009, plaintiff began a leave of absence because of stress.  (ECF 13 ¶ 29; ECF 18-3 ¶ 29.)  On February 17, 2009, defendant laid off approximately thirty employees, including plaintiff, in accordance with the seniority provisions in the collective bargaining agreement with the union.  (ECF 13 ¶¶ 30-31; ECF 18-3 ¶¶ 30-31.)  On April 7, 2009, defendant sent out rehire notices to approximately twenty employees, including plaintiff,

---

[1] Komulainen's alleged admission that he should not have called Dr. LaRue is irrelevant and immaterial, as is the letter written by plaintiff to Mark Dorian.  (ECF 18-3 ¶ 55.)  Plaintiff presents no evidence that the letter she wrote played any role in her being granted the bid.  As the court is not taking these contentions into consideration, defendant's objection to this proffered evidence is overruled as moot.  (Def.'s Obj. to Pl.'s Evid. ¶ 8, ECF 22.)

[2] Plaintiff's contention that she "does not know of any formal discipline" and that "[her supervisor] thought he had incriminating evidence" does not create an issue of material fact.  (ECF 18-3 ¶ 27.)  Plaintiff provides no evidence that her supervisor had some sort of ulterior motive, nor does she state anywhere that it is possible she was disciplined and did not know about it.  As the court is not taking this contention into consideration, defendant's objection to this proffered evidence is overruled as moot.  (Def.'s Obj. to Pl.'s Evid. ¶ 6.)

1  in accordance with the seniority provisions in the collective bargaining agreement with the
2  union. (ECF 13 ¶ 33; ECF 18-3 ¶ 33.) Plaintiff accepted the offer of reemployment on April 9,
3  2009, contingent upon her receiving a full release from her medical physician. (ECF 13 ¶ 35;
4  ECF 18-3 ¶ 35.)[3] Plaintiff has not returned to work since February 2009 and her medical leave
5  of absence remains in effect. (ECF 13 ¶¶ 37-38; ECF 18-3 ¶¶ 37-38.) Plaintiff "was never fired
6  from Huhtamaki, was never demoted, was never suspended, and was never given a bad
7  performance review at Huhtamaki." (ECF 13 ¶ 39; ECF 18-3 ¶ 39.)

III.  ANALYSIS

   A.  Standard

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[4]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "[cite] to particular parts of materials in the record [or show] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

---

[3] The court will strike those portions of plaintiff's complaint referring to plaintiff's being laid off and lost income and benefits due to her lay-off, as inconsistent with the record as a whole. (*See* Compl. ¶¶ 32-37, 51, 60, 89, 104.)

[4] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

4

support that fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48.

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

  B. Application

    i. Gender discrimination

Plaintiff alleges defendant discriminated against her because of her gender in violation of the California Fair Employment and Housing Act ("FEHA"), California Government Code § 12940. (Compl. at ¶¶ 40-54.) Section 12940(a) of FEHA provides that it is unlawful "[f]or an employer, because of . . . sex . . . to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

/////
/////
/////
/////
/////
/////

"California courts apply the Title VII framework to claims brought under FEHA." *Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007). This framework is as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to defendant 'to articulate some legitimate, nondiscriminatory reasons for the employee's rejection.' [] Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804 (1973)) (internal quotation omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253. "To survive summary judgment, plaintiffs must . . . introduce evidence sufficient to raise a genuine issue of material fact as to whether the reason the employer articulated is a pretext for discrimination." *Rodriguez v. John Muir Med. Ctr.*, 2010 U.S. Dist. LEXIS 90056, at *15 (N.D. Cal. Aug. 31, 2010).

Defendant contends that plaintiff cannot establish a prima facie case of gender discrimination because she did not suffer an adverse employment action. (Def.'s Mot. at 6.) Plaintiff counters by alleging that she was constructively discharged.[5] (Pl.'s Opp'n at 5.) Plaintiff supports this claim by alleging, "Defendant created and knowingly permitted working conditions that were designed to break Ms. Payne," presumably evidenced by the "overwhelming reluctance to award Ms. Payne the bid for the stock prep position," inadequate training, and investigation into her failure to clean up her work area. (*Id*. at 5-6.) Plaintiff

---

[5] Plaintiff raises constructive discharge for the first time in opposition to defendant's motion. It is well-established that "'summary judgment is not a procedural second chance to flesh out inadequate pleadings.'" *Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990)). Because defendant has not expressly objected, and in fact responds to plaintiff's argument, the court addresses plaintiff's constructive discharge claim nevertheless.

6

admits that she did not resign, but that she took what she calls a "medically necessary indefinite leave of absence." (*Id*. at 6.) Plaintiff also presents circumstantial evidence allegedly suggesting discriminatory animus. *See Rodriguez*, 2010 U.S. Dist. LEXIS 90056, at *14 (finding that plaintiffs can carry their burden of establishing a prima facie case by presenting circumstantial evidence). Specifically, plaintiff alleges that there have been no women in the beater room, where the stock prep operator job was performed, and she was told that it was not a job for a woman and that some individuals did not want any women working there. (Pl.'s Opp'n at 7.) Defendant notes that plaintiff did not resign, supported by the fact that defendant received a note from plaintiff's doctor on or about May 16, 2011 informing it that she can return to work on June 10, 2011, with no work restrictions. (Supp. Komulainen Decl. ¶ 4, ECF 20.)

Plaintiff cannot allege constructive discharge as a matter of law. "A constructive discharge occurs when a person quits his job under circumstances in which a reasonable person would feel that the conditions of employment have become intolerable. In such cases the individual has simply had enough; she can't take anymore." *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998) (internal citation omitted). The Ninth Circuit has found constructive discharge where "'a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions'" (*Knappenberger v. City of Phoenix*, 566 F.3d 936, 940 (9th Cir. 2009) (quoting *Huskey v. City of San Jose*, 204 F.3d 893, 900 (9th Cir. 2000))) and where it found "coercion inherent in the choice between retirement and a complete deprivation of income" (*id*. (citing *Kalvinskas v. California Institute of Tech.*, 96 F.3d 1305, 1308 (9th Cir. 1996))), but not where "[a plaintiff] does not even allege that a termination would have been inevitable." *Id*. at 941. The termination, whether voluntary or not, is critical. "[A]n employee's actual resignation functions as a necessary prerequisite to bringing a claim based upon constructive discharge." *Greenly v. Sara Lee Corp.*, 2008 U.S. Dist. LEXIS 35472, at **57-58 (E.D. Cal. Apr. 30, 2008). Here, it is undisputed that plaintiff has not been terminated, has not resigned, and cannot show that any

such termination would have been inevitable.  At hearing on June 8, plaintiff conceded that medical leave is not equivalent to constructive termination.  (*See* ECF 13 ¶ 39; ECF 18-3 ¶ 39.) Rather, in fact, plaintiff was hired for the stock prep operator job.

Even assuming that plaintiff's taking of a voluntary medical leave of absence was equivalent to a resignation, her claim for constructive discharge would fail.  "In determining whether a reasonable employee would feel compelled to resign, courts generally consider factors such as '(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.'"  *Greenly*, 2008 U.S. Dist. LEXIS 35472, at *58 (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)).  None of these factors are present in this case, where plaintiff was hired into the job for which she applied and where the only allegations that can even remotely be considered "badgering, harassment, or humiliation" are not against the employer, but are against co-workers for using "foul language" and making discriminatory remarks that were not directed at plaintiff.  (Compl. ¶ 46.)  Plaintiff's assertion that one of her trainers told her to "watch her back" also does not demonstrate "intolerable" working conditions.

The same is true of the three incidents utilized as support for plaintiff's gender discrimination claim in her opposition to the present motion: Komulainen's phone call to Dr. LaRue, plaintiff's training, and the incident involving her uncleaned work space.  Regarding Komulainen's phone call to Dr. LaRue, plaintiff does not dispute that Komulainen expressed concern for plaintiff's ability to do what he considered a more strenuous job than that for which she had work restrictions.  (ECF 13 ¶ 54; ECF 18-3 ¶ 54.)  The phone call to Dr. LaRue does not tend to show "intolerable" working conditions rising to the level of constructive discharge. Regarding plaintiff's training, defendant maintains it assigned her different trainers because of

1  "scheduling contingencies and operational requirements," which plaintiff does not meaningfully
2  dispute. (ECF 13 ¶ 11; ECF 18-3 ¶ 11.) Moreover, plaintiff admits she does not know if her
3  training was any different from that of any other stock prep operator. (ECF 13 ¶ 12; ECF 18-3 ¶
4  12.) Plaintiff's allegations that her training was somehow discriminatory are thus wholly
5  unsupported by any facts. Regarding the incident involving her uncleaned work space, plaintiff
6  was never disciplined. (ECF 13 ¶ 27; ECF 18-3 ¶ 27.) Nor does plaintiff anywhere allege that
7  her co-worker conspired with plaintiff's supervisors to not clean her work space so that she
8  would be disciplined. This incident also does not present evidence of "intolerable" working
9  conditions.

10  As plaintiff cannot as a matter of law carry her burden of stating a prima facie
11  claim for gender discrimination, her claim for gender discrimination necessarily fails. The court
12  thus need not reach the next two steps of the *McDonnell Douglas* analysis, as defendant cannot
13  be expected to satisfy legitimate, nondiscriminatory reasons for not taking an adverse
14  employment action against plaintiff.

15  ii.  Wrongful termination in violation of public policy

16  "To establish plaintiff's claim of wrongful termination in violation of public
17  policy, plaintiff must prove: (1) an employee-employer relationship; (2) an adverse employment
18  action; (3) the adverse action was a violation of public policy; (4) the relationship was a legal
19  cause of plaintiff's damages; and (5) plaintiff was damaged." *Klein v. Raytheon Co.*, 2009 U.S.
20  Dist. LEXIS 106666, at *31-32 (C.D. Cal. Nov. 2, 2009) (citing *Holmes v. Gen. Dynamics*
21  *Corp.*, 17 Cal. App. 4th 1418, 1426 (1993)). Plaintiff's claim of wrongful termination in
22  violation of public policy fails as a matter of law for the same reasons discussed above with
23  respect to her gender discrimination claim.
24  /////
25  /////
26  /////

### iii. Medical condition discrimination

The *McDonnell Douglas* analysis described previously in the context of gender discrimination is also applicable to claims of disability discrimination.[6] *See Faust v. California Portland Cement Co.*, 150 Cal. App. 4 th 864, 886 (2007). To maintain a prima facie case of disability discrimination under FEHA, plaintiff must show: "(1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability." *Id*.

Plaintiff maintains she was discriminated against due to her breast cancer. This claim fails for the same reasons as her gender discrimination claim, discussed above. Plaintiff fails to allege an adverse employment action. Moreover, even if plaintiff could allege an adverse employment action, plaintiff has failed to allege that any such action was taken as a result of her medical condition.

Plaintiff's only support for this claim is the alleged delay in awarding her the stock prep operator position, due to Komulainen's seeking the opinion of her doctor regarding whether she could work without restriction. (Pl.'s Opp'n at 8.) Defendant asserts any delay was the result of its "genuine concern regarding Plaintiff's ability to safely perform the duties of a stock prep operator," and there is no evidence of any discriminatory animus against plaintiff due to her cancer. (Def.'s Mot. Mem. at 14.)

While Komulainen's reasons for calling plaintiff's doctor may be contested, any dispute on this point does not create an issue of material fact. Moreover, plaintiff has failed to allege a connection between Komulainen's actions and plaintiff's status as a cancer patient. Plaintiff had only recently been working under restrictions. (ECF 13 ¶ 49; ECF 18-3 ¶ 49.) FEHA specifically allows an employer to "inquire into the ability of an applicant to perform job-

---

[6] Although both parties refer to this claim as one for disability and medical condition discrimination, plaintiff has nowhere alleged that she suffered from a disability. However, while disability and medical condition are separate bases for claims under FEHA, *see* CAL. GOV'T CODE § 12926, the standard appears to be the same and is treated as such by both parties.

related functions . . ." and to "require any examinations or inquiries that it can show to be job-related and consistent with business necessity." CAL. GOV'T CODE §§ 12940(e)(2) & (f)(2).

      iv.  Intentional infliction of emotional distress

    Defendant maintains that plaintiff's allegations against it do not rise to the level of extremity and outrageousness necessary to maintain a claim for intentional infliction of emotions distress ("IIED"). (Def.'s Mot. at 15-16.) In addition defendant contends that since plaintiff's discrimination claims fail, her IIED claim is preempted by her workers' compensation remedy. (*Id*. at 16.) Plaintiff counters that the conduct she alleges "rises to a level that goes beyond all possible bounds of decency." (Pl.'s Opp'n at 9.) This conduct by defendant includes "personally contacting [her] doctor, disparaging her, attempting to frustrate her seniority, purposely failing to provide adequate training, and trying to get her reprimanded for an incident that did not warrant such action." (*Id*.)

    To state a claim for IIED, plaintiff must allege "(1) extreme and outrageous conduct by [Defendants] with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quotations omitted). "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community' [and] the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.'" *Id*. at 1050-51 (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)). Liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*. at 1051 (quotation omitted). However, "[b]ehavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or

/////

unreasonably with the recognition that the acts are likely to result in illness through mental distress." *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 155 n.7 (1987).

Plaintiff has not alleged any conduct that rises above the level of "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Her allegations do not raise a triable issue of fact regarding her claim for IIED; this claim fails as a matter of law.

Moreover, defendant is correct in alleging that plaintiff's IIED claim is preempted by her workers' compensation remedy. (Def.'s Reply at 16.) Defendant's alleged conduct of investigating plaintiff's work station and work restrictions was inarguably a "normal part of the employment relationship . . . . [which is] covered by the workers' compensation exclusivity provisions." *Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990).

IV. CONCLUSION

The following portions of the complaint are stricken: paragraphs 32-37, 51, 60, 89, 104.

For the foregoing reasons, defendant's motion for summary judgment is GRANTED. This case is CLOSED.

IT IS SO ORDERED.

DATED: June 16, 2011.

_____
UNITED STATES DISTRICT JUDGE